THE ATTORNEY GENERAL
OF TEXAS


WILL WILSON
ATTORNEY GENERAL

January 29, 1957


Honorable Ralph T. Green
Director
Texas Commission on Higher Education
Austin, Texas

Opinion No. WW-10

Re: Whether the authorization of
the Texas Commission on Higher
Education is required for the
Agricultural and Mechanical
College of Texas to establish
and operate, in Arlington, a
graduate engineering division
of the A. & M. College, using
the facilities of Arlington

Dear Sir:                    State College.

Your request of January 16, 1957, for an opinion reads in
part as follows:

"At its regular quarterly meeting in Austin
on January 14th, the Texas Commission on Higher
Education authorized me to request, on behalf of
the Commission, the opinion of the Attorney Gen-
eral as to whether or not the authorization of the
Commission is required for the Agricultural and
Mechanical College of Texas to establish and operate
in Arlington, a graduate engineering division of the
A. & M. College using the facilities of Arlington
State College. This question arose in connection
with the proposal of the A. & M. College to establish
and operate such a graduate engineering division with
reference to the responsibilities and authority of
the Commission as set forth by the provisions of
S. B. 145, Fifty-fourth Legislature, Regular Session.

"The graduate engineering division which has been
proposed by the A. & M. College would be an extension
teaching program of the Main College at College Station,
with instruction being conducted on the campus of Arling-

ton State College. Graduate students completing the required program of work would be awarded the master's or doctor's degree, as appropriate, from the main college. The proposed division would come under the general supervision of the Dean of Engineering of A. & M. College, as in the case of resident engineering instruction on the main campus, with direct supervision provided by a director who would be on the payroll of A. & M. College. Although instruction in the program at Arlington would be provided by engineering and other faculty members of the A. & M. College, the direct teaching cost of this instruction would be financed from fees required of students enrolled in the program. The physical facilities of Arlington State College would be used in conducting the program."

The Texas Commission on Higher Education, as presently constituted, was created by Acts, 54th Legislature, Regular Session, 1955, page 1217, Chapter 487. Section 11 of said Act provides in part:

"The Commission shall make a continuing study of the program and degree offerings of wholly State-supported colleges and universities in relation to the needs of the State and shall report the results of the studies to the governing boards. No new department, degree program or certificate program shall be added at any State-supported college or university after September 1, 1956, except by specific prior approval by the Commission. . . ." (Emphasis added).

Section 11 further provides that the Commission "shall order the consolidation or elimination of programs where such action is in the best interests of the institutions themselves and the general requirements of the State of Texas".

Section 12 provides:

"The Commission shall make a continuing study of the needs of the State, for research and for extension and public services, and shall have the authority to designate the institutions to carry out research, extension and public service programs in so far as these functions are paid for with state funds. The Commission shall maintain an inventory of all research programs and extension and public service activities being conducted by the various institutions, whether State-financed or not, within the limits imposed by

security regulations governing defense contracts for research."

We believe the answer to the question submitted turns upon the construction of that portion of Section 11 which provides that:

"No new department, degree program or certificate program shall be added at any State-supported college or university after September 1, 1956, except by specific prior approval by the Commission." (Emphasis added).

The Agricultural and Mechanical College of Texas, presently offers, and prior to September 1, 1956, offered, graduate degrees in engineering to resident students on the main campus. Hence the proposed degree offering does not constitute the offering of a degree not previously offered to resident students on the main campus. It is, therefore, apparent that if the proposed degree offering is found to be a new degree program, such finding must be predicated upon the manner and circumstances it is offered, and the purposes to be achieved thereby.

The word "new" is a relative term. Mills County v. Brown County, 29 S.W. 650, 87 Tex. 475. In 28A Words and Phrases 354, the general meaning of said word when used in conjunction with other words and phrases is considered, and it is there stated:

"To accomplish a new and useful result, it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way."

Since students who complete the required program of graduate study at Arlington State College will be awarded the master's or doctor's degree, as appropriate, from the main college of the Agricultural and Mechanical College, the final result, at least from the standpoint of degrees awarded, is not new, for the main College already offers said degrees to resident students. We believe it significant, however, that the proposed offering is designed to meet the special needs of a limited group in a particular area, many miles distant from the main campus. It is primarily a public service undertaking in an area of academic instruction which is basically new to the College. The accomplishment of the program necessarily involves problems of administration and procedure which are peculiar to this type of program. It is also significant, as you point out in your letter, that

"the offering of graduate degree programs and the granting of advanced degrees, through an extension program are rare in the experience of public education in Texas, if not entirely new."

Section I of the Act  creating the Commission on Higher Education makes it clear that one of the primary functions of the Commission is to provide "coordinating services to our senior higher education systems . . . to the end that an efficient and effective state system of higher education may be developed".  The legislative intent, as shown throughout the Act, is to devise a system of higher education in Texas which serves the educational needs of all the state without needless overlapping or duplication of services.  We believe that the offering of graduate degree programs, and the granting of advanced degrees, through an extension program under the particular facts here presented, are among those activities which the Commission is charged by law to coordinate.

We, therefore, conclude that the extension program in graduate engineering proposed by A. & M. College represents a substantial new addition to the degree offerings of the College and to the structure of the college's degree programs; and that same constitutes a new degree program within the meaning of Section 11 and requires specific prior approval by the Texas Commission on Higher Education.

## SUMMARY

The specific prior approval of the Texas Commission on Higher Education is required for the Agricultural and Mechanical College of Texas to establish and operate on the campus of Arlington State College a graduate engineering division of A. & M. College, since same constitutes a new degree program within the meaning of Section 11, S.B. No. 145, Acts, 54th Legislature, Regular Session, 1955, P. 1217, Chapter 487.

Yours very truly,

WILL WILSON
Attorney General of Texas

APPROVED:

OPINION COMMITTEE
H. Grady Chandler
Chairman

By

Leonard Passmore
Assistant

LP:zt